UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL BRADWAY, | No. 2:20-cv-0436 JAM KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DR. YASHODARA RAO, | |
| Defendant. | |

Plaintiff is a state prisoner, proceeding without counsel. In his amended complaint, plaintiff renewed his request for temporary restraining order. On October 6, 2020, defendant filed an opposition. On November 12, 2020, plaintiff filed a document styled, "Affidavit, Supplemental for . . . Temporary Restraining Order." (ECF No. 42.) He then filed a supplemental affidavit.[1] (ECF No. 43.)[2] The court construes such filings as plaintiff's reply and

---

[1] Plaintiff appended a completed USM-285 form for service on Dr. Rao. (ECF Nos. 42 at 3; 43 at 5.) However, Dr. Rao has been served and filed an answer on October 6, 2020.

[2] On November 4, 2020, plaintiff also filed an "opposition" to defendants' answer. Rule 7(a) of the Federal Rules of Civil Procedure provides: "(a) Pleadings. Only these pleadings are allowed: [¶] (1) a complaint; [¶] (2) an answer to a complaint; . . . [¶] (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a) (emphasis added). The court did not order plaintiff to reply to defendants' answer and declines to make such an order. Thus, plaintiff's "opposition" (ECF No. 41) is disregarded.

supplemental affidavit. As discussed below, the undersigned recommends that plaintiff's motion be denied.

I. Plaintiff's Operative Pleading

This action proceeds on plaintiff's amended complaint (ECF No. 26) against defendant Dr. Rao based on plaintiff's claims that the doctor was and is being deliberately indifferent to plaintiff's serious mental health needs by, *inter alia*, allowing an unlicensed clinician Karla Solis to trigger and exacerbate plaintiff's myriad mental health symptoms and authorizing her to not document plaintiff's legitimate mental health issues precluding double celling, all in violation of plaintiff's Eighth Amendment rights. Despite documented mental health factors that preclude double cell housing, plaintiff alleges he is slated to be assigned double cell housing following his August 20, 2020 case management hearing, based solely on lack of bed space. (ECF No. 26 at 2, 4.)

Plaintiff asks the court to preserve his single cell housing until a state court management conference on August 20, 2020, and states that he "wishes to transition from EOP to CCCMS," a lower level of care.[3] (ECF No. 26 at 2.)

II. Motion for Temporary Restraining Order

A. Applicable Law

A temporary restraining order may issue upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439 (1974). In ruling on a motion for temporary restraining order, district courts apply the same factors used to evaluate a request for preliminary injunctive relief: whether plaintiff "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of

---

[3] The Mental Health Services Delivery System Program Guide for the California Department of Corrections and Rehabilitation provides four levels of mental health care services: Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care. Coleman v. Brown, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

equities tips in his favor, and . . . an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("Because our analysis is substantially identical for the injunction and the TRO, we do not address the TRO separately."). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [ ] tips sharply toward the plaintiff, . . . assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted).

Further, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Finally, the pendency of an action does not give the court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491-93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491-93; Mayfield, 599 F.3d at 969.

B. Discussion

Initially, the undersigned observes that as of October 5, 2020, plaintiff remained housed in a single cell and is receiving mental health care under the EOP level of care.[4] Moreover, Dr. Yao declares that mental health staff do not determine whether or not a prisoner is single cell housed.

---

[4] While plaintiff claims that he "wishes" to transition from EOP to CCCMS level of care, the gravamen of his pleading is his desire to retain single cell housing. Plaintiff does not include any allegations or evidence demonstrating that his level of care should be lowered to CCCMS; indeed, his claim that the actions of Karla Solis have exacerbated his mental health appear to support the opposite. In any event, the undersigned does not construe plaintiff's motion for temporary restraining order as seeking a court order reducing his level of care to CCCMS.

1 Rather, an interdisciplinary treatment team ("IDTT"), composed of plaintiff, his primary clinician, assigned psychiatrist, and correctional counselor, develop and update plaintiff's treatment plan, including whether or not plaintiff should have single cell status or be discharged to a lower level of care. (ECF No. 40-1 at 4.) For an inmate under the EOP level of care, the IDTT is "required to meet at least every ninety days for identifying treatment needs, plans, assessment, and updating treatment plans." (Id.)

Importantly, Dr. Yao is not and never has been a member of plaintiff's treatment team, and has never attended plaintiff's IDTT meetings. (ECF No. 40-1 at 3.) Dr. Yao declares that mental health care is an ongoing process, with a goal "to provide the appropriate level of treatment and promote individual functioning within the clinically and custodial least restrictive environment consistent with the safety and security needs of the inmate patient and institution." (ECF No. 40-1 at 4.) Thus, plaintiff's level of care and housing status is regularly evaluated and subject to change. Dr. Yao declares that "clinical single cell status should generally not be granted beyond ninety days," but can be renewed if the IDTT determines it is necessary. (ECF No. 40-1 at 5.) Indeed, at CHCF, inmate patients under EOP level of care are housed in double cell housing, and recommendations for single cell status based on mental health factors "is usually intended to be short term." (ECF No. 40-1 at 4.)

Contrary to plaintiff's allegations, Dr. Yao declares that records confirm plaintiff is monitored on a regular basis; plaintiff's treatment team has worked extensively with plaintiff to address his mental health symptoms and progress toward treatment goals, and monitor his "ongoing functional impairments as well as treatment needs." (ECF No. 40-1 at 3.)

Finally, even if the IDTT recommends an inmate receive single cell status, "the classification committee determines the housing assignment, taking into consideration the clinical recommendation." (ECF No. 40-1 at 5.) "The final decision for approval or removal of a single cell status is a custody function, and lies under the authority of the Warden or designee." (ECF No. 40-1 at 3.) As of August 2019, the IDTT and program supervisor noted no mental health factors warranted a single cell status recommendation for plaintiff. (Id.) Thus, Dr. Yao cannot, on her own, order plaintiff to be single cell housed. As of October 5, 2020, plaintiff was not

4

housed with another inmate, but such housing "is not based on a mental health recommendation for single cell housing. (ECF No. 40-1 at 4.)

On this record, the undersigned cannot find that plaintiff has demonstrated he is likely to succeed on the merits of this action. Dr. Yao has described the IDTT process, and plaintiff does not rebut Dr. Yao's explanation. Rather, plaintiff argues that Dr. Yao, through the administrative grievance process, allowed plaintiff's "single cell treatment safety contract to expire" pursuant to the IDTT dated August 8, 2019.[5] (ECF No. 43 at 2.) Yet plaintiff fails to show defendant's involvement in any of plaintiff's IDTT hearings or decisions. Because plaintiff sues Dr. Yao based on her supervision of the IDTT, plaintiff has not yet shown that the mental health care provided violates the Eighth Amendment. "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted). Instead, it appears plaintiff has a difference of opinion as to the decisions made by the IDTT, which is insufficient. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Thus, at this stage of the proceedings, the undersigned cannot find that plaintiff is likely to succeed on the merits of this action.

Moreover, plaintiff's conclusory statements concerning imminent harm are insufficient. Indeed, plaintiff has failed to demonstrate why he needs a single cell based on his mental health

---

[5] Plaintiff appears to argue that he is housed in a single cell based on a "single-cell treatment safety contract," based on a contract "implied by the federal receiver's office, C. Kelso." (ECF No. 43 at 3.)

or why he is unable to live with a cellmate, referring generally to his anxiety and depression, apparently claiming that if required to share housing, his mental health would deteriorate. (ECF No. 26 at 3.) But plaintiff "must do more than merely allege imminent harm sufficient to establish standing; [he] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Servs. Co., Inc., 844 F.2d at 674-675 (speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction) (internal citations omitted). Plaintiff's speculation that shared housing will trigger mental health issues or subject him to Covid-19 or other infectious illnesses is insufficient to demonstrate imminent harm.

Finally, the undersigned is not persuaded that the balance of equities tips in plaintiff's favor or that the requested relief is in the public interest. Plaintiff is currently receiving mental health care from trained mental health care providers at the EOP level of care, and plaintiff is part of the IDTT process. Absent evidence not presented here, such mental health professionals are better suited to determine whether plaintiff's mental health needs preclude shared housing.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's "opposition" to defendant's answer (ECF No. 41) is disregarded.

2. Plaintiff's November 12, 2020 filing (ECF No. 42) is construed as plaintiff's reply.

Further, IT IS RECOMMENDED that plaintiff's motion for temporary restraining order (ECF No. 26) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one** days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 1, 2020

/brad0436.tro.pi

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE