UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL JOHN BRADWAY, | No. 2:20-cv-00436 JAM KJN P |
| Plaintiff, | ORDER AND |
| v. | FINDINGS & RECOMMENDATIONS |
| YASHODARA RAO, | |
| Defendant. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with a civil rights action pursuant to 42 U.S.C. § 1983. He alleges that defendant, Dr. Yashodara Rao, violated plaintiff's Eighth and Fourteenth Amendment rights and breached an implied contract by authorizing Dr. Karla Solis to allow plaintiff's single cell status to expire and by failing to intervene to preserve his single cell status. Pending before this Court are defendant's summary judgment motion and two requests for judicial notice in support of its motion for summary judgment. (ECF Nos. 70 & 77-1.) Plaintiff also filed three motions: (1) an objection to one of defendant's requests for judicial notice (ECF No. 79); (2) a second statement of disputed facts (ECF No. 78); and (3) a request for judicial notice (ECF No. 82.). For the reasons stated below, this court recommends granting summary judgment in favor of defendant. The court also orders the following: (1) defendant's request for judicial notice (ECF No. 70-3) is denied;

1

(2) defendant's request for judicial notice (ECF No. 77-1) is granted; (3) plaintiff's second statement of disputed facts (ECF No. 78) is stricken; (4) plaintiff's objection to defendant's request for judicial notice (ECF No. 79) is stricken; and (5) plaintiff's request for judicial notice (ECF No. 82) is denied.

II. Background

Plaintiff filed a complaint under 42 U.S.C. § 1983 and moved for a temporary restraining order. (ECF Nos. 1 & 3.) This Court denied plaintiff's motion for a restraining order and dismissed his complaint with leave to file an amended complaint. (ECF Nos. 13 & 27.)

On June 12, 2020, plaintiff filed the first amended complaint. (ECF No. 26.) The operative complaint is based solely on a motion for a temporary restraining order to "preserve single-cell treatment" until a case management hearing in case no. STK-cv-LBC-2019-0014936 pending before the San Joaquin County Superior Court. (Id. at 1-2.) Plaintiff alleges that Dr. Rao allowed Dr. Solis to omit documentation of her role in exacerbating plaintiff's medical issues and to monitor his Interdisciplinary Treatment Team ("IDTT"), which permitted his single cell authorization to expire in violation of his Eighth and Fourteenth Amendment rights. (Id. at 3-4.) Plaintiff also claims that Dr. Rao was negligent for rejecting his prison grievances and failing to intervene to preserve his single cell status. (Id.) Moving him from a single to a double occupancy cell, plaintiff contends, also constituted breach of an implied contract issued by Judge Thelton E. Henderson. (Id.) Plaintiff attached an affidavit to his first amended complaint. (Id. at 5-6.)

Defendant answered the complaint, denying that plaintiff is entitled to single cell status beyond the recommendation of his medical treatment team and classification committee determination. (ECF No. 38 at 2.)

On October 14, 2021, defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] (ECF No. 70.) Defendant raises the following arguments in its motion:

---

[1] Plaintiff argues that defendant's summary judgment motion is untimely because it was filed more than 30 days after the close of discovery. (ECF No. 75 at 1-2.) He is mistaken. The Court ordered that all pretrial orders, except motions to compel discovery, shall be filed on or before October 14, 2021. (ECF No. 61 at 5.) Defendant compiled with this deadline by filing a motion

(1) defendant was not deliberately indifferent to plaintiff's serious medical needs; (2) causation is lacking; (3) the court dismissed plaintiff's Fourteenth Amendment due process claim; (4) plaintiff cannot establish a violation of the Americans with Disabilities Act or the Rehabilitation Act; (5) there is no evidence of an equal protection violation; (6) there is no evidence of a breach of contract; (7) plaintiff failed to comply with California Government Claims Act; and alternatively, (8) defendant did not violate any clearly established constitutional or statutory right of which a reasonable prison official would have known, and thus she is entitled to qualified immunity. (Id.; see also ECF No. 77.) Attached to defendant's motion is a request for judicial notice. (ECF No. 70-3.) By contemporaneous notice provided on October 14, 2021, defendant advised plaintiff of the requirements for opposing a motion brought pursuant to Federal Rule of Civil Procedure 56. (ECF No. 70-4.)

Plaintiff filed an opposition to defendant's motion for summary judgment on November 5, 2021. (ECF No. 75.) Defendant filed a reply to the opposition and a second request for judicial notice. (ECF Nos. 77 & 77-1.) Plaintiff opposed defendant's second request for judicial notice. (ECF No. 79.) Defendant objected to plaintiff's opposition, noting that "this objection includes additional arguments concerning the merits of Plaintiff's claims which could have been addressed in his opposition, and also asserts an unsupported and baseless and contradictory claim that the Office of the Attorney General was involved in transferring Plaintiff to a different institution." (ECF No. 81 at 1.) Defendant requests that this court strike the pleading as an unauthorized sur-reply or, alternatively, to reject plaintiff's arguments because they do not preclude granting summary judgment in defendant's favor.

On November 29, 2021, plaintiff filed an additional statement of disputed facts, which was untimely. (ECF No. 78.) Defendant objected to the filing of a second opposition as an unauthorized sur-reply and requests that this Court strike the pleading. (ECF No. 80.) In the alternative, defendant argues that the sur-reply fails to present grounds to deny the motion for summary judgment. (Id.)

---

for summary judgment on that date. (ECF No. 70.)

Plaintiff filed a request for judicial notice on December 17, 2021. (ECF No. 82.) In that motion, plaintiff requests that this Court take judicial notice that defendant approved "unlicensed post-doc intern, Ms. Karla Solis' 'deliberate indifference' in violation of Penal Code § 5068.5 not intended for benefit of government agency, rather for benefit of inmate." (Id. at 3.)

III. Legal Standards for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery to support its contention that a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computs., Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments; see also Matsushita, 475 U.S. at 587.

In resolving a summary judgment motion, the court examines facts cited by the parties from the record including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. The court must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (citation omitted).

On October 14, 2021, defendant provided plaintiff with contemporaneous notice of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 70-4.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).

IV. Request for Judicial Notice

Both parties ask this Court to take judicial notice of certain facts. Federal Rule of Evidence 201(b) provides that a federal court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In her first request, defendant asks this Court to take judicial notice of a complaint filed by plaintiff in Bradway v. Rao, et al., STK-CV-LBC-2019-0014936, in San Joaquin County Superior Court. (ECF No. 70-3.) Defendant states that this complaint was attached as an exhibit to the Notice of Removal filed in Bradway v. Rao, No. 2:21-cv-0059 (E.D. Cal.) on January 12, 2021. (Id.) While a court may take judicial notice of undisputed matters of public record, it may not take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). For example, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Lee, 250 F.3d at 306 (internal quotations omitted). Accordingly, this court denies defendant's request to take judicial notice of the truth of the facts contained within that record.

In her second request, defendant asks this Court to take judicial notice of an order dismissing the action in Bradway v. Rao, No. 2:21-cv-00059 (E.D. Cal.) on March 22, 2021, and the copy of the court docket in that matter. (ECF No. 77-1.) Because these documents can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," this Court grants the defendant's request.

Lastly, plaintiff asked this Court to take judicial notice of Exhibit A - Defendant's

6

Responses to Plaintiff's Amended First Set of Requests for Admissions. (ECF No. 82.) Courts may take judicial notice of facts either stipulated to by the parties or admitted in response to a request for an admission. See S.E.C. v. American Cap. Invs., Inc., 98 F.3d 1133, 1140 n.7 (9th Cir. 1996); see also 21B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 5102.2. But that is not what plaintiff seeks here. In response to the admission requests, defendant objected to and denied most of the requests. (ECF No. 82 at Ex. A.) Although defendant admitted some of the requests, those concern the authenticity of documents that are not attached to plaintiff's request for judicial notice. (Id.) By omitting these documents, plaintiff has failed to provide the Court with the necessary information for its request. Fed. R. Evid. 201(c). Furthermore, in plaintiff's request for judicial notice, he inaccurately characterizes defendant's responses as "clearly establish[ing] defendant's approval of unlicensed post-doc intern, Ms. Karla Solis' 'deliberate indifference' in violation of Penal Code § 5068.5." (Id. at 3.) Because the discovery responses and plaintiff's characterization of them do not constitute facts that are "not subject to reasonable dispute," this Court denies plaintiff's request.[3] See Garber v. Heilman, No. CV 08-3585-DDP (RNB), 2009 WL 409957, at *1, 7-8 (C.D. Cal. Feb. 18, 2009).

V. Undisputed Facts[4]

1. During the relevant time period, Gabriel Bradway was a state prisoner incarcerated at California Health Care Facility, Stockton ("CHCF"), within the custody of the Department

---

[3] This Court also strikes plaintiff's opposition to defendant's second request for judicial notice, which is an unauthorized sur-reply that relies upon the same discovery responses to oppose defendant's summary judgment motion. (ECF No. 79 at 13.)

[4] For purposes of summary judgment, the Court finds these facts are undisputed following its review of ECF document numbers 40-1, 70-2, 75, and 78 and documents referenced therein. Where plaintiff has failed to properly address defendant's assertion of fact as required, the undersigned considers the fact undisputed. See Fed. R. Civ. Pro. 56(e)(2). Plaintiff cannot rely on allegations he raised in a second amended complaint filed in a different case that was subsequently dismissed. (See ECF No. 75.) Furthermore, this Court refuses to consider defendant's undisputed facts numbered 17, 29, 33, and 34 in its filing because they are either unsupported by sufficient evidence, conclusory, argumentative, or share a combination of these attributes. (ECF No. 70-2.) This Court also strikes plaintiff's second statement of disputed facts (ECF No. 78) because it is an unauthorized sur-reply that contains conclusory and argumentative statements that plaintiff incorrectly characterizes as supported facts.

of Corrections and Rehabilitation ("CDCR"). (ECF No. 26 at 2, 5-6.)

2. During this time frame, defendant Dr. Yashodara Rao was employed as Chief of Mental Health at CHCF. (ECF No. 70-2 at Ex. E at ¶ 2.)

3. In her capacity as Chief of Mental Health, Dr. Rao is responsible for the overall supervision of mental health services to the inmate-patients at CHCF (excluding the Psychiatric Inpatient Program). (Id.; ECF No. 75 at 8.)

4. During the relevant time frame, Bradway was enrolled in the Enhanced Outpatient Program ("EOP") level of care. (ECF No. 40-1 at ¶ 7.)

5. The EOP provides an intensive level of outpatient mental health care in the mental health services delivery system, for illnesses characterized by increased delusional thinking, hallucinatory experiences, marked changes in affect, and vegetative signs with definitive impairment of reality testing and/or judgment, and/or inability to function in general population. (Id. at ¶ 3; ECF No. 75 at 8.)

6. The inmate-patient's IDTT is responsible for developing and implementing treatment plans. The main members of the IDTT include the primary clinician, assigned psychiatrist, correctional counselor, and inmate-patient. (ECF No. 40-1 at ¶¶ 3, 13.)

7. All treatment decisions are evaluated and updated on an ongoing basis by the current IDTT members while taking into the account the totality of the case, including but not limited to, current functioning as determined by impact of reported symptoms on ability to function in his current environment. The IDTT for EOP inmate-patients is required to meet at least every ninety days to identify treatment needs and assess and update treatment plans. (Id. at ¶¶ 6-7, 13.)

8. Dr. Rao is not, and has never been, a member of Bradway's IDTT, nor has she ever attended his IDTT meetings. (ECF No. 40-1 at ¶ 6; ECF No. 75 at 16.)

9. Dr. Rao never directed Dr. Solis to discharge Bradway from the EOP. This decision is made by the IDTT. (ECF No. 40-1 at ¶ 4; ECF No. 70-2 at Ex. A at 11, 18-21, 23.)

10. Dr. Rao did not prevent Dr. Solis from documenting Bradway's mental health case factors. (ECF No. 40-1 at ¶ 4; ECF No. 70-2 at Ex. A at 21, 23.)

11. Bradway does not know if Dr. Rao ever discussed his case with Dr. Solis. (ECF No. 70-2 at Ex. A at 23; ECF No. 75 at 16.)

12. Bradway does not know if Dr. Rao ever instructed or authorized Dr. Solis not to document his mental health issues. (ECF No. 70-2 at Ex. A at 21.)

13. Bradway does not know if Dr. Rao ever had direct supervision of Dr. Solis's work on his case. (Id. at 23.)

14. Because Dr. Rao was not part of Bradway's IDTT team, she was unaware of any conduct by Dr. Solis which may have triggered symptoms of anxiety, obsessive-compulsive disorder, obsessive-compulsory personality disorder, or depression, or caused a head injury, left food injury, self-mutilation, high blood pressure, or frequent medication adjustments to alleviate anxiety symptoms in inmate-patient Bradway. (ECF No. 70-2 at Ex. E at ¶ 4.)

15. Dr. Rao did not give Dr. Solis "full jurisdiction" over Bradway's IDTT for purposes of reviewing his single cell status on June 28, 2018, or at any other time, or for any other purpose. (Id. at ¶ 5.)

16. Dr. Rao was not present at Bradway's Unit Classification Committee ("UCC") on May 7, 2019, and did not approve any decisions reached at that time. (Id. at ¶ 6.)

17. Dr. Rao was unaware of any contract entered into by Bradway concerning his single cell status. (Id. at ¶ 7.)

18. Custody decisions, such as housing and single cell status, are under the authority of the Warden, and as such, not under Dr. Rao's authority. Mental health professionals can make decisions related to mental health treatment and housing recommendations based on mental health factors. (ECF No. 40-1 at ¶ 5; ECF No. 75 at 18.)

19. The decision for recommendation of single cell status, based on mental health, is made by the IDTT. The final decision for approval or removal of a single cell status is a custody function and lies under the authority of the Warden or designee. (ECF No. 40-1 at ¶ 8; ECF No. 75 at 18.)

20. Clinical single cell status should generally not be granted beyond ninety days, the timeline

for IDTT meetings, but it can be renewed if the clinical intervention continues to be necessary and can be substantiated by the treatment team as an effective intervention. (ECF No. 40-1 at ¶ 15; ECF No. 75 at 18.)

21. Dr. Rao never denied single cell housing status for Bradway and never approved a decision by custody stuff to revoke single cell status for him.  (ECF No. 70-2 at 37-38.)

22. Bradway had single cell status from the time he arrived at CHCF in April 2017 until May 2021.  (ECF No. 70-2 at Ex. A at 9, 12-13; ECF No. 40-1 at ¶ 8; ECF No. 75 at 39.)

23. Records indicate that in August 2019, the IDTT and program supervisor indicated that there are no mental health factors that would warrant a need for a recommendation for single cell status.  (ECF No. 40-1 at ¶ 8.)

24. A mental health chronology, dated August 8, 2019, signed by Dr. Abbott, stated that Bradway's treatment team does not recommend an extension of single cell status.  (ECF No. 70-2 at Ex. A at 15-17; id. at Ex. B.)

25. Bradway disagreed with the IDTT's evaluation of his need for single cell status. (ECF No. 70-2 at Ex. A at 22.)

26. Custody staff approved him for double cell status in May 2021, and Bradway admits there "was no intervention" on Dr. Rao's part to prompt the changes.  (ECF No. 70-2 at Ex. A at 9, 11, 18-20; ECF No. 75 at 41.)

27. Bradway testified that the decision to approve him for double cell status was "already predetermined by the UCC custody staff," namely his correctional counselor Diaz.  (ECF No. 70-2 at Ex. A at 14; ECF No. 75 at 41.)

28. Records indicate that Bradway has been monitored on an ongoing basis and there has been no evidence of exacerbation of symptoms inflicted by mental health staff.  An exacerbation of symptoms would have resulted in Bradway being referred to a higher level of mental health care.  (ECF No. 40-1 at ¶¶ 5, 7, 9, 12.)

29. At CHCF, the EOP houses inmate-patients in double cell housing, although an inmate-patient can be recommended for short-term single cell status based on mental health factors.  (Id. at ¶ 10.)

    30. Bradway's level of care and housing status for mental health reasons is reevaluated regularly and is subject to change.  (Id. at ¶ 12.)

VI.  Discussion

    Defendant moves for summary judgment on all of plaintiff's claims.  This Court addresses each argument in turn below.

    A.  Plaintiff's Eighth Amendment Claim

    Bradway alleges that Dr. Rao was deliberately indifferent to his serious mental health needs by allowing an unlicensed clinician, Dr. Karla Solis, to trigger and exacerbate his mental health symptoms and authorizing her to omit documentations of his mental health issues precluding double celling.  He also claims that Dr. Rao failed to intervene to protect his single cell status.  Defendant argues that she was not deliberately indifferent to Bradway's serious medical needs.

    The treatment a prisoner receives while incarcerated and the conditions of his confinement are subject to the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  See Farmer v. Brennan, 511 U.S. 825, 828 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  To state a claim, the prisoner must show that (1) objectively, the prison official's deprivation was sufficiently serious, and (2) subjectively, the prison official acted with sufficiently culpable state of mind.  See Wilson, 502 U.S. at 298-99.  The Eighth Amendment's deliberate indifference standard is a "high legal standard."  See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

    To meet the objective standard, the plaintiff must show that the medical need is serious.  A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991) (citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  If a prisoner establishes the existence of a

serious medical need, he must also meet the subjective standard, showing that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or in the way prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Toguchi, 391 F.3d at 1060.

Here, plaintiff has failed to present evidence that defendant's conduct denied, delayed, or intentionally interfered with his medical treatment. Viewed in the light most favorable to plaintiff, the record shows that Dr. Rao was not involved in the decision to transition Bradway from a single to double occupancy cell. The IDTT is responsible for developing and implementing an inmate-patient's treatment plan and meeting at least every ninety days to identify treatment needs and update treatment plans. Dr. Rao has never been a member of Bradway's IDTT, nor has she ever attended his IDTT meetings. Dr. Rao never directed Dr. Solis to discharge Bradway from the EOP, never prevented her from documenting Bradway's mental health case factors, and never gave her "full jurisdiction" over Bradway's IDTT for any purpose. Dr. Rao was not present at Bradway's UCC on May 7, 2019, and did not approve any decisions reached at that meeting. Although mental health professionals can make decisions related to mental health treatment and make housing recommendations based on mental health factors, Dr. Rao does not have authority to make housing decisions. Regardless of whether IDTT recommends single cell status based on mental health factors, the final decision is a custody function that lies under the authority of the warden or designee. Clinical single cell status is generally not granted beyond ninety days and is subject to renewal if IDTT deems it necessary. Bradway had single cell status from the time he arrived at CHCF in April 2017 until May 2021. During this timeframe, however, the records indicate that in August 2019, the IDTT and program supervisor indicated that there are no mental health factors that would warrant recommending continued single cell status for Bradway. Bradway disagreed with IDTT's evaluation, but custody staff approved him for double cell status in May 2021. Dr. Rao never denied single cell

housing status for Bradway and did not approve the custody staff's decision to revoke single cell status for him. Bradway admits that this decision was "predetermined by the UCC custody staff." (ECF No. 70-2 at Ex. A at 14; ECF No. 75 at 41.)

Although Bradway disagreed with the prison officials, a mere difference in opinion concerning the appropriate medical treatment cannot be the basis of an Eighth Amendment claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc). When there are two courses of medical treatments, the plaintiff "must show that the treatment the doctors chose was medically unacceptable under the circumstances" and that the doctors "chose this course in conscious disregard of an excessive risk to plaintiff's health." Id. Here, plaintiff has not made the requisite showing. The records show that in August 2019, IDTT indicated that there are no mental health factors that would warrant recommending single cell status for Bradway. A mental health chronology, dated August 8, 2019, signed by Dr. Abbott, stated that Bradway's treatment team does not recommend an extension of single cell status. Plaintiff has failed to present any evidence that the decision to transition him from a single to double occupancy cell was medically unacceptable under the circumstances or that his treatment team made that decision out of conscious disregard for an excessive risk to his health.

To the extent that Bradway is suing Dr. Rao based on her failure to intervene or her supervisory role as Chief Mental Health Officer at CHCF, this theory also cannot survive summary judgment. "Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991); see also Peace v. Kerlikowske, 237 F. App'x 157, 159 (9th Cir. 2007). For the first element, liability under 28 U.S.C. § 1983 arises only if plaintiff can show that defendant personally participated in the alleged violations. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor, like Dr. Rao, can only be held "liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations

1   and failed to act to prevent them. There is no respondeat superior liability under section 1983."
2   Taylor, 880 F.2d at 1045. For the second element, a plaintiff can prove that a supervisory official
3   caused the constitutional violation if the official "sets in motion a 'series of acts by others which
4   the actor knows or reasonably should know would cause others to inflict' constitutional harms."
5   Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); see Vazquez
6   v. County of Kern, 949 F.3d 1153, 1166 (9th Cir. 2020).

   Viewing the record in the light most favorable to plaintiff, Bradway has made no showing that Dr. Rao directed, participated in, or had knowledge of the alleged misconduct of Dr. Solis, or that she failed to act with deliberate indifference towards his medical needs. A plaintiff cannot defeat a motion for summary judgment by relying solely on conclusions unsupported by the facts. See King v. Idaho Funeral Serv. Ass'n, 862 F.2d 744, 746 (9th Cir. 1988). To the contrary, defendant has presented evidence that Dr. Rao was not involved in IDTT's recommendation for a double occupancy cell and did not have the authority to make such housing decisions. (See ECF No. 75 at 36-37 (May 18, 2021, UCC approval of double cell housing for Bradway).) Additionally, there is no evidence that Dr. Rao caused Bradway's alleged injuries from being approved for a double cell. First, Dr. Rao did not make this decision; rather, the UCC cleared Bradway for a double cell in May 2021. (ECF No. 75 at 36-37.) Second, Dr. Rao has no authority to make such housing decisions. The UCC based its decision in part on the August 8, 2019 note by Dr. Abbott that IDTT finds insufficient justification from a mental health perspective to recommend further renewal of Bradway's single cell status. (Id.) Lastly, Dr. Rao is not part of Bradway's IDTT team and did not participate in any of its meetings or decisions regarding Bradway's single cell status.

   This Court concludes that there is no genuine issue of material fact raised regarding defendant's subjective knowledge or conscious disregard of a substantial risk of serious injury to plaintiff and recommends granting summary judgment in favor of defendant on this claim.[5]

---

[5] To the extent plaintiff argues that requiring inmates to share a cell is cruel and unusual punishment, this claim also fails. In Rhodes v. Chapman, the Supreme Court held that double celling did not constitute cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) ("The double celling made necessary by the unanticipated increase in prison population

14

B. Plaintiff's Americans with Disabilities Act or Rehabilitation Act Claims

Plaintiff alleges that Dr. Rao violated his rights under the Americans with Disabilities Act and Rehabilitation Act by denying Bradway's 602 HC grievance regarding EOP supervisor Dr. Moore's statement that "you are right, lack of bed space is exactly why your single-cell treatment is denied, take us to court." (ECF No. 26 at 4.) Defendant argues that "Dr. Rao would not be liable for failing to intervene concerning this grievance because she lacked authority to order single-cell housing." (ECF No. 70-1 at 18; see also ECF No. 77 at 13-14.)

Defendant correctly observes that the Court did not construe plaintiff's pleading as raising a cognizable Americans with Disabilities Act or Rehabilitation Act claim. However, assuming that plaintiff attempted to do so, plaintiff must demonstrate that he "(1) is a handicapped person; (2) that he is otherwise qualified; and that the [defendant's] actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap." Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1996); see also Reyes v. Ryan, 424 F. App'x 659 (9th Cir. 2011); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (noting that Title II of the Americans with Disabilities Act was "expressly modeled after § 504 of the Rehabilitation Act"). Here, after reviewing the evidence in the light most favorable to Bradway, this Court concludes that plaintiff has failed to state a prima facie case supported by a genuine issue of material fact. As stated above, there is no evidence that Dr. Rao's actions or omissions caused Bradway to be transitioned from a single to double occupancy cell or otherwise subjected him to discrimination based on his mental health or handicap. To the contrary, as part of EOP, Bradway was monitored on an ongoing basis. His IDTT met at least every ninety days to assess his needs and to update his treatment plan. The EOP houses inmate-patients in double cell housing, but they can recommend inmate-patients for short-term single cell status based on mental health factors. Clinical single cell status is generally not granted beyond ninety days, but the status can be renewed if the

---

did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement.") Bradway has failed to present any facts to succeed on a similar argument.

15

clinical intervention continues to be necessary and can be substantiated by the treatment team as an effective intervention. Bradway had single cell status from the time he arrived at CHCF in April 2017 until May 2021. In May 2021, UCC cleared him for a double occupancy cell because IDTT found no justification from a mental health perspective to recommend renewing his single cell status. Plaintiff has failed to offer any evidence to support his claim that his transition into a double occupancy cell amounts to a violation under the Americans with Disabilities Act or Rehabilitation Act. This Court recommends granting summary judgment in favor of defendant on these claims. As a result, this Court need not address defendant's additional argument as to whether plaintiff can seek damages or injunctive relief under the Americans with Disabilities Act or Rehabilitation Act against a defendant in her individual capacity.

C. Plaintiff's Fourteenth Amendment Equal Protection Claim

Plaintiff argues that Dr. Rao violated his Fourteenth Amendment rights by approving him for a double occupancy cell, and conversely, allowing IDTT staff to not renew his single cell status. (ECF No. 26 at 3-4.) Defendant contends there is no evidence that Dr. Rao violated his right to equal protection. (ECF No. 70-1 at 19; ECF No. 77 at 14.)

The medical care system violates equal protection only if it has no rational relationship to a legitimate state interest. See Dandridge v. Williams, 397 U.S. 471, 485 (1970); Roberts v. Spalding, 783 F.2d 867, 872 (9th Cir. 1986). California's Code of Regulations § 3269 states that

> Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit. If staff determines an inmate is suitable for double celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing. IHAs shall be made on the basis of available documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.

Cal. Code Regs. tit. 15, § 3269. The regulation provides that "[i]n cases where single cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment." Id. at § 3269(f). "Single cell status based upon clinical recommendation is usually a temporary short-term measure

and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the inmate's/clinician's request." Id. Here, this system of periodically reviewing an inmate's clinical single cell status determination is rationally related to the government's legitimate interest in providing inmates with medically necessary services. Bradway provides no reason or facts to support his conclusion that the system is constitutionally deficient.

Next plaintiff contends that defendant violated his Fourteenth Amendment rights by "approving IDTT's discrimination" by not identifying any mental health factors that would preclude Bradway from living in a double occupancy cell. (ECF No. 26 at 3-4.) To the extent plaintiff is arguing that Dr. Rao treated him differently than similarly situated inmates, there is no evidence in the record to support this claim. Accordingly, this Court recommends granting summary judgment in favor of defendant on plaintiff's equal protection claim.

   D. Plaintiff's Breach of Contract Claim

Plaintiff asserts that the orders issued by Judge Thelton Henderson in the Plata v. Henderson action and "class action regulations" issued in the Armstrong Court Ordered Remedial Plan created an implied contract, which defendant breached by allowing his single cell status to expire. (ECF No. 26 at 4; ECF 75 at 43.) Defendant, on the other hand, contends that these documents do not give rise to a breach of contract claim. (ECF No. 70-1 at 20.)

Under California law, a breach of contract includes the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. See Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). "The essential elements of a contract are: parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration." Lopez v. Charles Schwab & Co., 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550). "An essential element of any contract is the consent of the parties, or mutual assent." Donovan v. RRL Corp., 26 Cal. 4th 261, 270 (2001).

Here, neither Judge Henderson's order nor the Armstrong Court Ordered Remedial Plan constitute an implied contract between Bradway and Dr. Rao. In the former, the state conceded that deficiencies in prison medical care violated prisoners' Eighth Amendment rights and

stipulated to a remedial injunction.  See Brown v. Plata, 563 U.S. 493, 507 (2011).  The state failed to comply with that injunction, and the district court appointed a receiver to oversee the remedial efforts.  Id.  Believing that reducing overcrowding was the only way to remedy the constitutional violations, the district court granted plaintiffs' request to convene a three-judge panel under the PLRA to order reductions in the prison population.  Id. at 509.  The Supreme Court affirmed the order of the three-judge court.  Id. at 545.  In the latter, a certified class of present and future California state prison inmates and parolees with various physical and learning disabilities sued California state officers for injunctive relief.  Armstrong v. Davis, 215 F.3d 1332 (9th Cir. 2000).  The parties settled, and defendants stipulated they were not in compliance with some statutes and developed a proposed plan to remedy those violations.  Id.  The resulting outcomes in both cases were not contracts; Bradway, therefore, cannot seek redress from any injuries caused by violations of these remedial plans by alleging a breach of contract claim in a new, separate action.  This Court recommends granting summary judgment in favor of defendant on plaintiff's breach of contract claim.

E.  Plaintiff's Government Claims Act Claim

To the extent that Plaintiff alleges a claim under California's Government Claims Act (the "Act"), this claim also does not survive summary judgment.  The Act governs suits against a public entity or public employee.  See Moore v. Twomey, 120 Cal. App. 4th 910, 913-14 (2004).  Except as otherwise provided in the statute, "a public employee is liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov. Code § 820(a).  To file a claim, plaintiff must submit a filing fee and present the claims within six months of the incident date.  Id. at §§ 901, 905.2(c), 910, 910.2, & 911.2.  Here, the record shows that Bradway failed to meet these requirements.  (ECF No. 75 at 50-51.)  This Court, therefore, recommends granting summary judgment in favor of defendant on this claim.

F.  Defendant's Qualified Immunity Affirmative Defense

In the alternative, defendant argues that she is entitled to qualified immunity.  (ECF No. 70-1 at 21-22.)  Plaintiff claims that qualified immunity does not protect defendant in this action.  (ECF No. 75 at 2-6.)  This Court need not decide this issue because it recommends granting

summary judgment in favor of defendant on all plaintiff's claims.

VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's request for judicial notice (ECF No. 70-3) is denied.
2. Defendant's request for judicial notice (ECF No. 77-1) is granted.
3. Plaintiff's second statement of disputed facts (ECF No. 78) is stricken.
4. Plaintiff's objection to defendant's request for judicial notice (ECF No. 79) is stricken.
5. Plaintiff's request for judicial notice (ECF No. 82) is denied.

Further, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 70) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 3, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

\TAA.brad0436.msj